IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  1:13-cv-128-MEF |
| | ) | (WO – Publish) |
| DOLGENCORP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dolgencorp, LLC's ("Dollar General") Motion for Summary Judgment (Doc. #21).  This case arises out of Plaintiff Kimberly Thomas's ("Thomas") allegations that Dollar General discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"), on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and on the basis of her taking approved leave under the Family and Medical Leave Act ("FMLA").  For the reasons that follow, the Court finds that Dollar General's motion is due to be GRANTED.

### I. JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over the parties' claims under 28 U.S.C. §§ 1331 and 1343(a)(4).  The parties do not dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds adequate allegations supporting both.

1

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23.

Once the moving party has met its burden, the non-moving party must "go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A plaintiff must present evidence demonstrating that it can establish the basic elements of its claim, *Celotex*, 477 U.S. at 322, because "conclusory allegations without specific supporting

facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### III. FACTS

The Court has carefully considered the submissions of the parties in support of and in opposition to the motion. The submissions of the parties, taken in the light most favorable to Thomas, the non-moving party, establish the following material facts:

Dollar General hired Thomas as a store manager at one of its locations in Dothan, Alabama in September 2004. As a store manager, Thomas's duties included hiring employees to staff the Dollar General store, training employees, managing employee schedules, ensuring the inventory was properly stocked, and overseeing the cleanliness of the store. Beginning in 2009, and at all times relevant to this suit, Thomas was subject to a district manager, Molly Gomillion ("Gomillion"), whose job was to oversee the day-to-day operations of fifteen to twenty Dollar General stores in the Dothan area.

In 2006, Thomas requested FMLA leave for the birth of one of her children. Thomas requested FMLA leave by using a hotline specifically reserved for FMLA requests that

3

would connect her with Dollar General's corporate offices.  After requesting FMLA leave through the hotline and faxing in supporting medical documents, the corporate office would decide whether to approve the leave and for how long.  Thomas received approval for leave in 2006 for the birth of her child and returned to her store manager position afterwards.

In December 2006, Thomas was diagnosed with breast cancer.  Shortly afterward, Thomas received radiation treatment and liquid chemotherapy for her breast cancer.  She received radiation treatment for a month or two and liquid chemotherapy for four to six months.  Thomas did not miss work during this time since she received radiation treatment before work and chemotherapy on her off days.  Aside from the days on which she received chemotherapy, which were her off days, Thomas, with the help of her husband and family members, was able to perform daily activities such as grocery shopping and attending to family matters.  At the end of Thomas's treatment in mid-2007, Thomas's cancer was in remission, although she continues to take preventive medication.

Thomas requested and received FMLA leave a second time in 2011 for the birth of another child.  At the end of her leave, she returned to her position as store manager.  In December 2011, Thomas discovered lumps in her breasts and, after consultation with her doctor, decided to schedule a double mastectomy as a preventive measure.  Thomas again requested and received FMLA leave from Dollar General through March 11, 2012.  After Thomas received approval for FMLA leave, she telephoned Gomillion to inform her how long she would be gone.  Thomas states that Gomillion "seemed frustrated" when Thomas told Gomillion she would be taking leave.  (Doc. #21-6, at 56–57.)  Thomas also states that

4

Gomillion told her she might not be able to "save" Thomas's job.[1]  (Doc. #24-1, at 6.)

Earlier in 2011, and before Thomas's medical leave began on December 30, 2011, Gomillion had downgraded Thomas from "Good" to "Needs Improvement" on a Store Manager Performance Review.  (Doc. #21-6, at 81–84.)  Gomillion's Performance Review cited numerous problems with Thomas's management of her store, such as greater loss of inventory and failure to keep the store clean.  Gomillion eventually issued a "coaching document" listing specific goals Thomas must meet in managing her store.  (Doc. #21-6, at 123.)  On November 22, 2011, Gomillion issued a Performance Improvement Plan ("PIP") requiring Thomas to meet specific goals in managing her store within 90 days or face termination.[2]  (Doc. #21-6, at 125–26.)  On January 2, 2012, three days after Thomas began her FMLA leave for her double mastectomy, Gomillion sent an e-mail to Lakeisha Robichaux ("Robichaux"), Human Resources Manager for Dollar General.  The purpose of the e-mail was to inform Robichaux of Thomas's current performance under her PIP.  The e-mail recounts numerous instances of mismanagement by Thomas and includes the following statements:

> She [Thomas] was getting back on track until she found out she was pregnant and her personal situations (divorce, abuse, cancer) got in the way and have caused her to lose control of her store.

---

[1] This statement is not hearsay but rather an admissible party admission since it was allegedly made within the scope of Gomillion's employment.  Fed. R. Evid. 801(d)(2)(D).  Thus, the Court can consider it at summary judgment.

[2] This was before Thomas had discovered lumps in her breast and requested FMLA leave.

5

. . .

> I have told you this long story of the last week to get your
> advice on what we need to do.  I know if her leave paperwork
> comes through, we can't do anything until she comes back.
> Once she comes back can we fast track the PIP since she is
> obviously not going to get it done, or what are your suggestions?
> I am so tired of running this store in addition to my district, and
> paying her to not run it as DG requires.  I am tired of her
> excuses.

(Doc. #21-8, at 33.)

The next day, January 3, 2012, Gomillion visited Thomas's store, which had recently been robbed.  Gomillion testified that she asked employees at the store to confirm that they had taken a Computer Based Learning ("CBL") class on robbery prevention.  Gomillion stated that two employees, Sandrienna Reed ("Reed") and Eric Madison ("Madison"), notified her that they had not taken the robbery prevention CBL.  Gomillion requested that Reed and Madison take the CBL and write a statement reflecting that they had not taken the CBL.  Reed submitted a statement the same day, but Madison never gave a statement. Although Gomillion stated that Reed told Gomillion that she [Reed] had not taken the robbery prevention CBL, Reed never told Gomillion that Thomas had taken the CBL for Reed.  Reed's personnel record shows that she took several CBLs, including robbery prevention, on May 16, 2011, shortly after she began her employment.  A subsequent investigation of payroll records by Gomillion and Robichaux revealed that Reed did not clock in on May 16, 2011, at Thomas's store.  Gomillion further stated that on January 16, 2012, Jeff Rendine, another Dollar General employee, submitted a written statement in which

6

he states that he saw Thomas taking the Beer and Wine CBL for Madison in December 2011. However, Madison's training record does not show any CBL courses marked as completed for December 2011, but it does show that he completed the Beer and Wine CBL in June 2011. (Doc. #21-7, at 208.) Gomillion and Robichaux subsequently inspected Madison's payroll records and found that, as with Reed, Madison had not clocked in on the date in June 2011 in which he had taken the robbery prevention CBL. Gomillion stated that she asked Madison whether Thomas had taken his CBL for him but that Madison said he couldn't remember whether this had occurred. Gomillion and Robichaux also attempted to look at the store's closed circuit television for evidence of Thomas taking CBLs for her employees, but the footage was too old and had not been stored.

On March 14, 2012, the day Thomas returned to work from her FMLA leave, she met with Gomillion and Tracy McDonald, a district manager in a neighboring district. Gomillion informed Thomas that she was suspended, pending the conclusion of an investigation, for completing CBLs for Reed and Madison. Thomas denied that she had completed the CBLs for Reed and Madison and provided a written statement to that effect. She explained that she had Reed and Madison complete their CBLs on an off day. Thomas states that she mistakenly believed that if an employee logged in on an off day to complete a CBL, this would automatically clock in the employee for purposes of payroll. However, employees clocked in at the store's register, so if Reed and Madison had completed their CBLs on off days without clocking in, they would not have been paid. It is undisputed that if Thomas had allowed employees to work off the clock, this would have been grounds for termination.

7

On March 28, 2014, Thomas was terminated.  Dollar General's Personnel Action Form states the reason for termination as, "Kim was terminated for falsifying documents and working associates off the clock."  Dollar General later provided the same reasons for Thomas's termination in documents it submitted in opposition to Thomas's unemployment compensation and in its position statement to the Equal Employment Opportunity Commission.  (Docs. ##24-3; 24-4; 21-7, at 213–15.)

In October or November of 2011, when Thomas was still a Dollar General employee, Gomillion investigated another store manager for possibly taking a CBL for one of his employees.  The store manager, Ronald Reeves ("Reeves"), is a non-disabled male. Gomillion became suspicious after she observed Reeves taking a CBL on closed circuit television even though he had already completed 100% of his required CBLs.  Gomillion's investigation revealed that one of Reeves's store employees, Cedric Carroll ("Carroll"), had in fact taken the CBL she suspected Reeves of taking.  Carroll had accidentally taken the CBL while Reeves was still logged on to the computer network, so Carroll did not get credit in the computer system for taking the CBL.  Gomillion verified that Carroll took the CBL by observing him take the CBL on closed circuit television.  Carroll took the CBL on a day that he was scheduled to work.  What she had observed Reeves doing on closed circuit television was logging on to the computer system to mark Carroll's CBL as complete.  Gomillion disciplined Reeves for marking Carroll's CBL as complete without first contacting her and

8

issued him a written counseling.[3]

## IV.  DISCUSSION

Thomas brings claims against Dollar General for violation of the ADA (Count I) based on her having cancer, for violation of Title VII for gender discrimination (Count II), and for violation of the FMLA for her termination after taking approved leave (Counts III and IV).  (Doc. #1.)

### A.    ADA

Thomas argues that Dollar General violated her right to be free from discrimination based on disability (cancer) under the ADA when it terminated her after she took leave to have a double mastectomy.  The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  An employer unlawfully discriminates against a qualified individual with a disability by taking an adverse employment action against him because of the disability, or by failing to provide "reasonable

---

[3] The Court has not considered Thomas's statement about what she heard from store manager Renee Pride because it is inadmissible hearsay.  Thomas states that an unidentified Dollar General employee told Renee Pride that Reeves had taken a CBL for another employee but was not fired. Hearsay is admissible at summary judgment only if it could be reduced to admissible form at trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999).  Thomas's statement is offered for the truth of the matter asserted since she attempts to use it to establish there is a genuine dispute about what Reeves did, and it is inadmissible hearsay-within-hearsay.  Fed. R. Evid. 801, 802, 805. The Court further overrules Thomas's objection to Gomillion's declaration as a sham because it merely includes additional details not stated in Gomillion's deposition and is not "inherently inconsistent" with her deposition testimony, which is required for a finding of a sham declaration. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986).

accommodations" for the disability, unless doing so would impose an undue hardship on the employer.  42  U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a); *Morisky v. Broward Cnty.*, 80 F.3d 445, 447 (11th Cir. 1996).

An ADA plaintiff may prove disability discrimination through either direct or circumstantial evidence.  *See Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1451 (11th Cir. 1998).  The parties agree this is a circumstantial evidence case.  In circumstantial evidence cases, a plaintiff must first make out a prima facie case.  The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action, after which the burden shifts back to the plaintiff to establish that this reason is pretextual.  *Mayfield v. Petterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973)); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam) ("The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.").

Under this framework, to establish a prima facie case of disability discrimination, Leiser bears the burden of showing that he (1) has a disability; (2) is a qualified individual under the ADA; and (3) was subjected to unlawful discrimination because of his disability. *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  If Thomas meets this burden, Dollar General must then produce a legitimate, non-discriminatory reason for the adverse employment action, *Cooper v. Southern Company*, 390 F.3d 694, 732 (11th Cir. 2004), and if Dollar General does so, the burden shifts back to Thomas to produce substantial evidence that Dollar General's proffered reason is pretextual. *Crawford v. Carroll*, 529 F.3d

10

961, 976 (11th Cir. 2008); *Chapman v. AI Transport*, 229 F.3d 1012, 1024–25 (11th Cir. 2000).

Dollar General argues that Thomas cannot make her prima facie case because, in her particular case, her cancer is not a disability covered by the ADA and because she has produced no evidence of discrimination based on her cancer.  Because the issue of pretext, or lack thereof, is dispositive in this case the Court will assume, without deciding, that Thomas can establish a prima facie case of unlawful discrimination.

As to Dollar General's legitimate, non-discriminatory reason for Thomas's termination, it states that Thomas was terminated for taking CBLs for other employees and for working employees off the clock in violation of company policy, both of which provide grounds for termination.  Dollar General has met its "exceedingly light" burden by producing legitimate, non-discriminatory reasons for Thomas's termination.  *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  The burden now shifts to Thomas to provide evidence that Dollar General's stated reasons for her termination are pretext.

To show pretext, Thomas must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted).  A court may not use a pretext inquiry to second-guess an employer's business judgment. "Instead, [a court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d

1354, 1361 (11th Cir. 1999).

Thomas presents evidence purporting to show that Dollar General was motivated by discriminatory animus, that Dollar General has given shifting explanations for its actions, and that Thomas's claim that she did not complete the CBLs for her employees creates a genuine dispute of fact on the true reasons for her termination.  Thomas first references the January 2, 2012 e-mail from Gomillion to Robichaux, which was sent three days after Thomas began her FMLA leave for her double mastectomy.  In the e-mail, Gomillion states, "She [Thomas] was getting back on track until she found out she was pregnant and her personal situations (divorce, abuse, cancer) got in the way and have caused her to lose control of her store . . . Once she comes back can we fast track the PIP since she is obviously not going to get it done, or what are your suggestions? . . . I am tired of her excuses."  Prior to sending the e-mail, Thomas stated that Gomillion "seemed frustrated" with Thomas's leave request and that Gomillion stated she might not be able to "save" Thomas's job.  Thomas also points to the close time period between when Thomas began her leave and Gomillion's e-mail expressing her intent to "fast track" Thomas's PIP.  Thomas argues that a reasonable fact finder could conclude that Gomillion was motivated by discriminatory intent and resolved to find a reason to terminate Thomas for taking leave as the result of her disability.

Thomas next argues that the disparate treatment between her and Reeves suggests disability discrimination.  Reeves was a non-disabled store manager who was also investigated for taking a CBL for one of his employees, but Reeves, unlike Thomas, was not fired

Finally, Thomas supports her pretext argument by claiming both that Dollar General has given "shifting" explanations for her termination and that her own denial that she took CBLs for her employees creates a material question of fact as to whether Dollar General believed she falsified documents.  Thomas points to her termination form, which states she was terminated for falsifying documents and working people off the clock, in contrast to the testimony of Gomillion and Robichaux, who both initially stated in their depositions that Thomas was terminated for falsifying documents.  Gomillion later stated in her deposition, though, that she listed both reasons on Thomas's personnel action form because Thomas admitted to Gomillion that the reason the employees were not clocked in when they took the CBLs was that they had completed them on their off days and, therefore, were not compensated in violation of Dollar General's wage and hour policy.  (Doc. #21-7, at 35.) Thomas further argues that her denial that she took the CBLs for her employees precludes summary judgment because it creates a dispute of fact about whether she took the CBLs, and, therefore, a dispute of fact about whether Dollar General sincerely believed she had.

The Court does not find this evidence, whether taken individually or collectively, sufficient to establish a material dispute of fact on pretext.  Gomillion's January 2, 2012 e-mail in which she refers to Thomas's "personal situations" including "divorce, abuse, cancer" is not a strong enough "stray comment" to raise a dispute of material fact as to pretext. Gomillion's reference to Thomas's "personal situations" was made in an e-mail to Robichaux in which Gomillion discussed Thomas's failure, in Gomillion's opinion, to implement the PIP that had been put in place before Thomas's FMLA leave after Gomillion's negative

13

performance evaluation earlier in the previous year.  However, Thomas was not terminated for failure to implement her PIP.  She was terminated either for falsifying documents or working employees off the clock.  Although Gomillion's comment about Thomas's cancer might constitute a "stray comment" that could provide circumstantial evidence of pretext, "statements by nondecisionmakers, or *statements by decisionmakers unrelated to the decisional process itself*" fail to satisfy the plaintiff's burden of showing pretext.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) (emphasis added).  Gomillion's stray comment was unrelated to her decision to fire Thomas and, thus, fails to satisfy Thomas's burden on pretext.  Indeed, Gomillion's reasons for firing Thomas resulted from her visit to Thomas's store after it had been robbed, which occurred <u>after</u> she sent the e-mail in question and which resulted in Reed's written statement that she had not taken a robbery prevention CBL, Rendine's statement that he had seen Thomas take the CBLs for Reed and Madison, the payroll records showing that Reed and Madison took their robbery prevention on a day they were not scheduled to work, and Thomas's admission to Gomillion that she allowed employees to take their CBLs on off days.

Two contrasting cases involving stray comments further support the conclusion that Gomillion's e-mail is not enough to establish a material dispute of fact on pretext.  *See Scott v. Suncoast Beverage Sales, Inc.*, 295 F.3d 1223 (11th Cir. 2002); *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286 (11th Cir. 1998).[4]  In *Ross*, the plaintiff was a black employee who was

---

[4] While both of these cases involve race discrimination under Title VII, case law relevant to Title VII is relevant to ADA cases because both employ the same burden-shifting framework.  *See*

fired for soliciting tips. 146 F.3d at 1288. The plaintiff's supervisor, who was instrumental in the employer's decision to fire plaintiff for soliciting tips, had himself received tips. *Id.* at 1291. The plaintiff also testified this supervisor had pointed at him and stated, "You see that one over there, I am going to get rid of him." *Id.* Another employee had stated, "I never seen as many blacks in this building except in a Tarzan movie." *Id.* The Eleventh Circuit concluded that "these comments, *considered together with the fact that* [plaintiff's supervisor] *had received tips*," supported a reasonable inference of pretext. *Id.* at 1292 (emphasis added). By contrast, in *Scott* the Eleventh Circuit held that the plaintiff's future supervisor's statement, "We'll burn his black ass," was insufficient to create a genuine dispute of fact on pretext because it was unrelated to the decision to terminate the plaintiff and was unsupported by additional evidence of pretext. 295 F.3d at 1228–30. The court distinguished *Ross*, citing *Rojas v. Florida*, 285 F.3d 1339 (11th Cir. 2002), and stated that a stray comment unrelated to the employment decision "will usually not be sufficient absent some additional evidence supporting a finding of pretext." *Id.* at 1229.

Here, Gomillion's oblique reference to Thomas's disability is much less indicative of discriminatory animus than the comments in *Ross* and *Scott*. Like the comments in both cases, Gomillion's comment was unrelated to her decision to terminate Thomas for falsifying CBLs or working employees off the clock. Thus, like the employee in *Scott*, Thomas may not create a genuine issue of fact on pretext from the January 2, 2012 e-mail alone, but must

---

*Binns v. Primary Grp., Inc.*, 23 F. Supp. 2d 1363, 1365 (M.D. Fla. 1998) (noting the applicability of Title VII case law to the ADA and citing cases).

produce additional evidence of pretext. Thomas attempts to produce such additional evidence based on the allegedly disparate treatment of another store manager who was accused of taking CBLs for his employees, the "shifting explanations" Dollar General gives for Thomas's termination, and Thomas's denial that she took CBLs for her employees. None of these provides additional evidence of disability discrimination.

Thomas attempts to show evidence of discrimination with the example of store manager Reeves, a non-disabled male, who was suspected of taking CBLs for one of his employees but who was not fired. Far from providing evidence of discrimination, the case of Reeves shows that Gomillion took evidence of store managers taking CBLs for their employees seriously and viewed it as misconduct that warranted investigation. Gomillion stated she became suspicious of Reeves when she observed him on closed circuit television taking a CBL even though he had already completed all of his CBLs. Her subsequent investigation revealed that his store employee, Carroll, had taken his CBL while accidentally logged in under Reeves's computer network account. Gomillion had observed Reeves logging in to mark Carroll's CBL as complete. Even though Gomillion's investigation revealed that Reeves did not take Carroll's CBL for him, she still disciplined Reeves for marking Carroll's CBL as complete without first contacting her.

In Thomas's case, Gomillion's investigation resulted in a written statement that Reed had not taken the robbery prevention CBL, a statement from Rendine that he had seen Thomas take CBLs for Madison, and payroll records that revealed Reed and Madison had taken CBLs on their off days without clocking in. When Gomillion confronted Thomas with

these facts, Thomas denied that she took the CBLs for her employees and instead stated she had them complete the CBLs on their off days.  This was an admission by Thomas that she allowed employees to work without being paid, even if her mistake was based on a misunderstanding of how employees clocked in.  Thus, unlike her investigation of Reeves, Gomillion's investigation of Thomas revealed that either Thomas had completed the CBLs for her employees or she had allowed them to take their CBLs on their off days without compensation, either of which was a terminable offense.  "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'"  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).  In this case, Reeves and Thomas were both investigated for taking CBLs for employees, but Reeves was exonerated while the results of the investigation into Thomas revealed she had either taken the CBLs for employees or had allowed them to work off the clock, either of which was a terminable offense.  Reeves and Thomas were not involved in the same or similar conduct and, thus, their different disciplinary treatment could not be discriminatory.

Thomas's argument that Dollar General provided "shifting reasons" for terminating her fails because, while Dollar General's reasons may be presented in the alternative, they are not inconsistent and were the reasons stated at the time of Thomas's termination.  Thomas argues that Dollar General provided "shifting reasons" for her termination.  Thomas's Personnel Action Form stated, "Kim was terminated for falsifying documents and working

17

associates off the clock," but Gomillion and Robichaux initially stated in their depositions that Thomas was fired for taking CBLs for her employees.  Gomillion then later stated in her deposition that she listed both reasons on Thomas's Personnel Action Form because Thomas admitted to Gomillion that the reason the employees were not clocked in when they took the CBLs was that they had completed them on their off days and, therefore, were not compensated in violation of Dollar General's wage and hour policy.  (Doc. #21-7, at 35.)  Dollar General's nondiscriminatory reasons for firing Thomas are not "shifting" because they have not offered inconsistent or contradictory reasons for firing Thomas during the course of this case.  *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194–95 (11th Cir. 2004) (finding that employer's testimony stating four different and inconsistent reasons for why plaintiff's infomercial was unauthorized and grounds for termination were shifting explanations); *see also Pate v. Chilton Cnty. Bd. of Educ.*, 853 F. Supp. 2d 1117, 1133–34 (M.D. Ala. 2012) (stating that for reasons to be shifting the "new reasons relied on in litigation must plainly contradict the reasons relied on at the time of the decision to be found to be pretextual.  The reasons must contradict each other, and not merely be cumulative.").[5]

---

[5] The Court acknowledges that Dollar General's reasons are "inconsistent" in the sense that Dollar General cannot maintain both that Thomas took Reed and Madison's CBLs for them *and* that she required Reed and Madison to complete their CBLs off the clock.  (Doc. #25, at 32 n. 14.)  However, the reasons are consistent for the purposes of the pretext inquiry because: (1) Dollar General had a sincere and reasonable belief that Thomas committed misconduct worthy of termination regardless of whether Thomas told the truth about not taking CBLs for her employees; and (2) Dollar General has not given additional, inconsistent reasons for terminating Thomas other than the ones stated on the Personnel Action Form at the time of Thomas's termination, which is what is required to constitute shifting reasons for the purposes of creating a genuine dispute of fact on pretext.  *Cf. Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298–99 (11th Cir. 2006) (finding genuine dispute of fact on pretext based in part on employer's shifting reasons where

Finally, Thomas's denial that she took CBLs for her employees does not create a factual dispute on pretext because it does not create a triable issue on whether Dollar General had alternative nondiscriminatory grounds for terminating her, namely, Thomas's admission that she allowed employees to work off the clock. Regardless of whether Thomas told the truth about not falsifying CBLs for her employees, she did admit to violating another company policy to Gomillion. The inquiry is not whether Thomas took CBLs for her employees, but whether Gomillion honestly believed Thomas had committed an offense that warranted termination. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470–71 (11th Cir. 1991) (stating that proper inquiry in the pretext context is whether employer believed in good faith that employee committed misconduct, not whether employee was actually guilty of misconduct.). Thomas has presented no evidence to raise a genuine dispute of fact concerning Gomillion's honest belief that Thomas had committed misconduct that warranted termination. Therefore, Thomas has failed to carry her burden of creating a genuine dispute on pretext. As a result, summary judgment is due to be GRANTED in favor of Dollar General on Thomas's ADA claim in Count I.

## B.    Title VII Gender Discrimination

Thomas brings a claim for gender discrimination against Dollar General in Count II of her complaint based solely on her termination resulting from alleged disparate treatment from Reeves, the other store manager investigated for taking CBLs for his employees. To

---

employee's separation notice made no reference to disciplinary status or job performance but employer later testified that employee was insubordinate).

establish a prima facie case of disparate treatment, Thomas must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly-situated male employees more favorably; and (4) she was qualified to do the job. *Maniccia*, 171 F.3d at 1368 (11th Cir. 1999) (citation omitted). Where, as here, a disparate treatment claim is based on discriminatory discipline, a plaintiff must show as an element of her prima facie case that either (a) she did not violate the work rule, or (b) that she engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against her were more severe than those enforced against the person outside the protected class. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).  As discussed above, Thomas indisputably violated either the work rule of taking CBLs for employees or working employees off the clock, and Reeves did not engage in the same or similar conduct since he did not take CBLs for his employees nor was he accused of working employees off the clock.  Therefore, Thomas has failed to establish a prima facie case of gender discrimination since Reeves was not disciplined differently for the same or similar conduct. *See Churchill v. City of Panama City Beach Fla.*, 395 F. App'x 531 (11th Cir. 2010) (finding plaintiff failed to establish gender discrimination based on disparate disciplinary treatment where male officer who recanted false testimony received lesser punishment than female plaintiff who did not recant false testimony).  Even assuming Thomas could establish a prima facie case of gender discrimination, as discussed above, Thomas has failed to create an issue of pretext on Dollar General's legitimate, nondiscriminatory reasons for firing her.  For these reasons, summary judgment is due to be

GRANTED in favor of Dollar General on Thomas's claim for gender discrimination in Count II of her complaint.

## C.    FMLA Interference & Retaliation

Thomas brings claims for FMLA interference (Count III) and FMLA retaliation (Count IV). The FMLA prohibits employers from interfering with employees' rights to take FMLA leave or with their right to be reinstated to the same or equivalent position upon return from FMLA leave. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir. 2001). "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Id*. However, if an employer can show that it would have discharged the employee had she not been on FMLA leave, then the employer can deny the employee's right to reinstatement. *Id.* at 1208. For the same reasons that Thomas has failed to create a genuine issue of pretext for her ADA claim, Thomas's FMLA interference claim fails because Dollar General had a reason for terminating her unrelated to her FMLA leave. The fact that Gomillion's investigation into Thomas's misconduct occurred while Thomas was on FMLA leave does not implicate the FMLA since the reasons for Thomas's termination were unrelated to her FMLA leave. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1242–43 (11th Cir. 2010) (stating that the FMLA "is not implicated in the least if an employee's absence permits her employer to discover past professional transgressions that then lead to an adverse employment action against the employee").

In contrast to an interference claim, an employee asserting an FMLA retaliation claim

21

must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Strickland*, 239 at 1207. To state a claim for retaliation, Thomas must allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Id.* Thomas fails to present sufficient evidence to create an issue of fact on the third element since she has failed to call into dispute Dollar General's assertion that it terminated her for either completing CBLs for employees or working employees off the clock. *See Schaaf*, 602 F.3d at 1243–45 (upholding grant of summary judgment for FMLA retaliation claim even though employer learned of employee's poor management style while on FMLA leave). Therefore, summary judgment is due to be GRANTED in favor of Dollar General on Thomas's FMLA claims in Counts III and IV of her complaint.

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1.      Dollar General's Motion for Summary Judgment (Doc. #21) is GRANTED as to all claims, and Thomas's complaint is DISMISSED WITH PREJUDICE.

2.      The trial of this case is CANCELLED.

Because this Memorandum Opinion and Order resolves all claims in this case, the Clerk of Court is directed to close the file. A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this the 11th day of July, 2014.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE